```
              UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARNELL HUTCHINSON,              : CIVIL NO: 1:11-CV-00320
                                 :
          Plaintiff              :
                                 : (Judge Jones)
     v.                          :
                                 : (Magistrate Judge Smyser)
SHIRLEY MOORE SMEAL, et al.,     :
                                 :
          Defendants             :
```

**ORDER**

I. Background and Procedural History.

On February 16, 2011, the plaintiff, a state prisoner proceeding *pro se*, commenced this 42 U.S.C. § 1983 action by filing a complaint.  The plaintiff also filed an application to proceed *in forma pauperis.*

The complaint names as defendants: Shirley Moore Smeal, the Acting Secretary of the Pennsylvania Department of Corrections (DOC); Dorina Vamer, the Chief Grievance Officer of the DOC; B. Corbin, the Acting Superintendent at the State Correctional Institution at Huntingdon (SCI-Huntingdon); Connie Green, the Grievance Coordinator at SCI-Huntingdon; H. Wiedel, a unit manager at SCI-Huntingdon; P. Lechner, a unit manager at

SCI-Huntingdon; C. Cook, a correctional counselor at SCI-Huntingdon; and C. Conrad, a correctional counselor at SCI-Huntingdon.

The plaintiff alleges the following facts in his complaint.

The plaintiff is confined at SCI-Huntingdon.  On October 1, 2010, the plaintiff was being "staffed"[1] for prerelease, outside module housing and parole.  The staffing was conducted by defendants Wiedel and Cook.  At the staffing, defendant Cook presented a report which asserted that the plaintiff had done time under a previous inmate number for rape and related charges.  The plaintiff pointed out to defendant Wiedel that if that report were correct the DOC would not have supported him for outside work in 2009.  The plaintiff also mentioned that at his last staffing defendant Cook had reported that he had done time for robbery under a previous inmate number and that he had filed a grievance against defendant Cook regarding that matter.  The plaintiff indicated that he was going to file another grievance now.

---

1. It is not entirely clear what the plaintiff means when he uses the terms "staffed" and "staffing."

2

Defendant Cook also fabricated a report that indicates that a presentence investigation report indicates that the plaintiff's ex-wife alleged that the plaintiff physically and mentally abused her.  Defendant Cook recommended that the plaintiff participate in a Batterer's Group.  The plaintiff told defendant Cook that Cook was lying and that Cook was retaliating against him for filing grievances against Cook. Defendant Wiedel said that she did not have time to check the information at that time and that she would continue the staffing.

The plaintiff left defendant Wiedel's office, stopped at the sergeant's desk to request a grievance form and then returned to his cell.  A few minutes later, the plaintiff was called back to defendant Wiedel's office and was questioned about why he was filing a grievance.  Defendant Wiedel told the plaintiff that she had checked with the records office and that she had been told that the plaintiff does not have any rape convictions and that he was correct in denying such convictions.  The plaintiff told defendant Wiedel that he was still going to file a grievance against defendant Cook because

3

defendant Cook was retaliating against him for prior grievances that he had filed.

Defendant Wiedel then started questioning the plaintiff about a 1972 conviction for assault, asking the plaintiff whether he had assaulted his girlfriend.  The plaintiff told defendant Wiedel to check the records to see for herself.  Defendant Wiedel then started insulting and belittling the plaintiff by saying: "You look much older than fifty-six (56) years old and you won't get out of jail until you are about eighty (80) years old."  The plaintiff responded by saying this is retaliatory "Bull-Sh" just to stop me from getting prerelease and making parole.  The plaintiff tried to leave the office.[2]

Ten minutes later the plaintiff was taken to the Restricted Housing Unit and was given a misconduct report charging that he had used abusive language and had disobeyed an order.  Defendant Wiedel wrote on the misconduct report that the plaintiff had been right about not having a rape conviction

---

2. It is not clear whether the plaintiff actually left the office or not.

4

but that the plaintiff had admitted to assaulting his girlfriend.  The statement about the plaintiff admitting to assaulting his girlfriend is a lie and fabrication.  The plaintiff received sixty days of disciplinary custody time.

The plaintiff claims that defendant Green violated his due process rights by not investigating the allegations of the plaintiff's grievance and by passing the grievance on to someone else for a response.

The plaintiff claims that defendant Lechner lied in his investigation report by falsely stating that the plaintiff had admitted that he has assault charges and a conviction for conduct involving his ex-wife.

The plaintiff claims that defendant Conrad violated his due process rights by not checking the plaintiff's criminal records for truthfulness. Without examining the presentence investigation report, defendant Conrad accepted defendant Cook's word that the plaintiff had physically and mentally

5

abused his ex-wife. Defendant Conrad's main objective was to assign the plaintiff to a Batterer's Group.[3]

Defendant Corbin failed to protect the plaintiff's due process rights by allowing SCI-Huntingdon staff to generate and perpetrate fabricated reports of non-existent charges and fabricated allegations of spousal abuse. These false reports are the root cause of the plaintiff not being recommended for parole, prerelease and outside housing.

The plaintiff claims that all of the defendants retaliated against him because he challenged the fabricated reports of defendants Wiedel and Cook. The plaintiff claims that he was placed in the RHU to prevent him from filing a grievance against defendant Cook.

In addition to claiming that the defendants violated his due process and First Amendment rights, the plaintiff claims that the defendants violated DOC policies.

---

3. The plaintiff does not allege that he was assigned to a Batterer's Group or, if so, who assigned him or what the consequences of such an assignment were.

6

The plaintiff claims that the defendants have labeled him a woman batterer, which has stigmatized him.  He alleges that this has caused him, his wife and his family great distress.  He claims that this has violated his Eighth Amendment rights.

The plaintiff claims that the defendants have erroneously asserted that there is no punishment for non-participation in recommended groups.  He asserts that this is error in that DOC policies and regulations indicate that an inmate will not be supported by the DOC if the inmate refuses to take a recommended group.  The plaintiff claims that the defendants' actions violated the Ex Post Facto Clause, his state-created liberty interests and the Equal Protection Clause.

The plaintiff is seeking declaratory and injunctive relief as well as compensatory and punitive damages.

By an Order dated February 22, 2011, we granted the plaintiff's application to proceed *in forma pauperis*.  We also reviewed the complaint pursuant to 28 U.S.C. § 1915A.  We

7

concluded that the complaint states a retaliation claim upon which relief may be granted against defendants Cook and Wiedel but that the complaint fails to state any other claim upon which relief may be granted.  We ordered that the plaintiff may file an amended complaint on or before March 22, 2011.  We warned the plaintiff that if he were to fail to file an amended complaint, we would recommend that all claims in the complaint be dismissed except the retaliation claims against defendants Cook and Wiedel.

The plaintiff has not filed an amended complaint.  But he has filed a motion for the appointment of counsel.  By a separate Report and Recommendation, we have recommended that all claims in the complaint be dismissed except the retaliation claims against defendants Cook and Wiedel.  In this Order we address the plaintiff's motion for the appointment of counsel.

II. Discussion.

"Indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." *Montgomery v. Pinchak,* 294 F.3d 492, 498 (3d Cir. 2002).  Yet

under U.S.C. § 1915(e)(1), the court may request an attorney to represent an indigent litigant in a civil case. The court has broad discretion to request an attorney to represent an indigent civil litigant. *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). But it may not require an unwilling attorney to represent an indigent litigant in a civil case. *Mallard v. U.S. District Court*, 490 U.S. 296, 310 (1989).

The United States Court of Appeals for the Third Circuit has developed a number of factors the court should consider when deciding whether to ask an attorney if he or she will accept the responsibility of representing a *pro se* plaintiff. *See Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993). The threshold inquiry is whether the plaintiff's case has some arguable merit in fact and law. *Montgomery, supra,* 294 F.3d at 498-99. If a plaintiff overcomes this threshold hurdle, the court should consider other factors including 1) the plaintiff's ability to present his or her own case; 2) the complexity of the legal issues; 3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such investigation; 4) the degree to which the case is likely to turn on credibility determinations; 5) whether the

9

case will require testimony from expert witnesses; and 6) whether the plaintiff can attain and afford counsel on his or her own behalf. *Parham v. Johnson,* 126 F.3d 454, 457 (3d Cir. 1997). This list is not meant to be exhaustive. *Tabron, supra,* 6 F.3d at 157. Rather, the determination of whether appointment of counsel is warranted must be made on a case-by-case basis. *Id.* at 158.

In the United States District Court for the Middle District of Pennsylvania, the need for a list of attorneys available for appointment to represent plaintiffs in potentially meritorious civil cases has been addressed in Local Rule 83.34. The Middle District Chapter of the Federal Bar Association has assembled a panel of attorneys who will consider representing indigent civil litigants at the request of the court. LR 83.34.3. The court may present a request for a *pro bono* attorney to the *pro bono* chair of the Middle District Chapter of the Federal Bar Association. *Id.*

Because we have recommended that all claims in the complaint be dismissed except the retaliation claims against defendants Cook and Wiedel, we will only consider the

10

retaliation claims against defendants Cook and Wiedel in connection the motion for appointment of counsel. We can not say at this point that those claims are without merit. Thus we will consider the other, pertinent factors in determining whether or not to appoint counsel.

First, we consider the plaintiff's ability to present his case. This factor is perhaps the most significant factor the court should consider in deciding whether or not to appoint counsel. *Montgomery, supra,* 294 F.3d at 501. In analyzing the plaintiff's ability to present his own case, the court should consider the plaintiff's education, literacy, prior work experience, prior litigation experience, ability to understand English and, if the plaintiff is a prisoner, the restraints placed on the plaintiff by incarceration. *Tabron, supra,* 6 F.3d at 156.

The record in this case does not contain any information regarding the plaintiff's education, work experience or prior litigation experience. From the documents that the plaintiff has already filed with the court it is clear that the plaintiff understands English, is literate and is able

11

to communicate effectively.  Still the plaintiff asserts that he has limited access to the law library and limited knowledge of the law.  He also asserts that his imprisonment will greatly limit his ability to litigate this case.  Nonetheless the plaintiff's circumstances do not appear to be any different than any other prisoner plaintiff.

Second, we consider the complexity of the legal issues. "Where the legal issues are complex, it will probably serve everyone involved if counsel is appointed." *Parham, supra,* 126 F.3d at 460.  The legal issues in this case are not complex. The standards governing retaliation claims are well established.  But we recognize that it may still be difficult for a *pro se* plaintiff to marshal and properly present evidence to establish his claims. *See Montgomery, supra,* 294 F.3d at 502.

Third, we consider the degree to which factual investigation will be necessary and the plaintiff's ability to pursue such investigation.  The plaintiff contends that he will have no ability to retrieve electronically stored information and deleted information.  He characterizes such information as

12

at the very heart of this case.  He also contends that at this time he is unable to obtain his criminal records and presentence report.  The plaintiff will, however, be given ample opportunity to conduct discovery regarding his retaliation claims.  We are unwilling at this point to conclude that the plaintiff will be unable to conduct a meaningful factual investigation.

Fourth, we consider the degree to which the case is likely to turn on credibility determinations.  That is not yet clear.

Fifth, we consider whether the case will require expert testimony.  Expert testimony will not be necessary with respect to the plaintiff's retaliation claims.

Finally, we consider whether the plaintiff can attain and afford counsel on his own behalf.  The plaintiff has been granted leave to proceed *in forma pauperis* and there is no basis to conclude that the plaintiff can retain counsel on his own behalf.

The court would prefer that all litigants be represented. Nevertheless, given the large number of cases brought by *pro se* plaintiffs and the relative scarcity of attorneys willing to accept *pro bono* appointments in these cases, we must exercise our discretion to appoint counsel discerningly.

After considering the above factors, we conclude that the circumstances presented do not justify a request to the *pro bono* chair of the Middle District Chapter of the Federal Bar Association for a *pro bono* attorney. A number of the factors weigh in favor of appointing counsel. However, we must also consider whether counsel can be found to represent the plaintiff. We conclude that it is unlikely that counsel willing to represent the plaintiff in this case can be found. This conclusion is based on previous experience in a range of prisoner plaintiff cases. Accordingly, we will deny the plaintiff's motion for the appointment of counsel. We will deny the motion without prejudice to the court reconsidering, if warranted, whether or not to appoint counsel at a later point in the case if circumstances change.

III. Order.

**IT IS ORDERED** that the plaintiff's motion (doc. 8) for the appointment of counsel is **DENIED**.

/s/ J. Andrew Smyser
J. Andrew Smyser
Magistrate Judge

Dated: April 1, 2011.